Manny A. Frade, Esq.
Adam P. Wald, Esq.
Meltzer, Lippe, Goldstein & Breitstone, LLP
*Attorneys for Plaintiff Kean Development Company, Inc.*
190 Willis Avenue
Mineola, New York 11501
Telephone: (516) 747-0300
Facsimile: (516) 747-0653
mfrade@meltzerlippe.com
awald@meltzerlippe.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

| | |
|---|---|
| KEAN DEVELOPMENT COMPANY, INC., *on Behalf of Itself and as Representative for All Others Who May Be Deemed Beneficiaries of a Certain Trust Created Pursuant to Lien Law Article 3-A*, | Civil Action No. |
| | **COMPLAINT** |
| Plaintiff, | Jury Trial Demanded |
| -against- | |
| REVIVAL HOLDINGS LLC, REVIVAL SASH & DOOR, LLC, PRELUDE LLC d/b/a SEQUEL, REVIVAL SASH ACQUISITION LLC, SACHS CAPITAL PARTNERS, LLC, MAULOA MANAGEMENT, LLC, SACHS CAPITAL FUND I, LLC, SACHS CAPITAL FUND II, LLC, SACHS CAPITAL – REVIVAL, LLC, REVIVAL LOC, LLC, MENDHAM CAPITAL PARTNERS, LLC, SILVER LINING REVIEW RESIDENTIAL LLC, RAMCAP HOLDINGS, INC., PETER MANNING, ROBERT HENLEY, MICHAEL CANIZALES, HARRIS MYLONAS, MANUEL HENRIQUEZ, GEORGE CANNON, BRIAN RAMSEY, AMANDA RAMSEY, ASHLEY BRADY, ANDREW SACHS, JOHN DOE NOS. 1 THROUGH 10 and JOHN DOE ENTITY NOS. 1 THROUGH 10, | |
| Defendants. | |

-------------------------------------------------------------------------X

Plaintiff Kean Development Company, Inc. ("Kean"), by and through its attorneys,

Meltzer, Lippe, Goldstein & Breitstone LLP, as and for its Complaint, sets forth as follows:

**JURISDICTION**

1.       This Court has subject matter jurisdiction over the above-captioned action (the "Action") pursuant to 28 U.S.C § 1332(a)(1) because this is a civil action between citizens of different States and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

**VENUE**

2.       The venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Kean's claims occurred, or a substantial part of property that is the subject of the Action is situated in this judicial district.

**PARTIES**

3.       Kean is, and, at all times relevant to this Action, was a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 5 Main Street, 2nd Floor, Cold Spring Harbor, New York, 11724.

*A.   The Revival Defendants.*

4.       Upon information and belief, defendant Revival Holdings LLC ("Revival Holdings") is, and, at all times relevant to this Action, was a limited liability company organized and existing under the laws of the State of New Jersey, with addresses at 78 Diamond Road, Springfield, New Jersey 07081 and 135 East 57th Street, #18-134, New York, New York, 10022.

5.       Upon information and belief, defendant Revival Sash & Door, LLC ("Revival Sash") is, and, at all times relevant to this Action, was a limited liability company organized and existing under the laws of the States of New Jersey and/or Delaware, with addresses at 1601 Belvedere Road, E102, West Palm Beach, Florida 33406, 78 Diamond Road, Springfield, New

Jersey 07081, and/or Incorporating Services, Ltd., 3500 South Dupont Highway, Dover, Delaware 19901.

6.      Upon information and belief, defendant Revival Sash Acquisition LLC ("Revival Acquisition") is, and, at all times relevant to this Action, was a limited liability company organized and existing under the laws of the State of Florida, with a principal address at 7150 NE 7th Avenue, Boca Raton, Florida 33487.

7.      Upon information and belief, defendant Prelude LLC d/b/a Sequel ("Sequel") is, and, at all times relevant to this Action, was a limited liability company organized and existing under the laws of the State of Florida, with addresses at 7749 Southwest Ellipse Way, Stuart, Florida 34997, 7755 Southwest Ellipse Way, Stuart, Florida 34997, and 1921 SW Panther Trce, Stuart, Florida 34997.

8.      Upon information and belief, defendant Ramcap Holdings, Inc. ("Ramcap") is, and, at all times relevant to this Action, was a corporation organized and existing under the laws of the State of Florida, with an address at 1921 SW Panther Trce, Stuart, Florida 34997.

9.      Upon information and belief, defendant Silver Lining Review Residential LLC ("Silver Lining Review") is, and, at all times relevant to this Action, was a limited liability company organized and existing under the laws of the State of Florida, with an address at 78 Diamond Road, Springfield, New Jersey 07081.

10.      Upon information and belief, defendant Mendham Capital Partners, LLC ("Mendham") is a limited liability company organized and existing under the laws of the State of Delaware, with addresses at 221 North Broad Street, Suite 3A, Middletown, Delaware 19709 and 11 Washington Valley Road, Morristown, New Jersey 07960.

4861-5741-4461, v. 6

**B.** *The Sachs Defendants.*

11.     Upon information and belief, defendant Sachs Capital Partners, LLC ("Sachs Partners") is a limited liability company organized and existing under the laws of the State of Delaware, with addresses at 10516 Tulip Lane, Potomac, Maryland 20854 and Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

12.     Upon information and belief, defendant Mauloa Management, LLC ("Mauloa"), is a limited liability company organized and existing under the laws of the State of Delaware, with addresses at 10516 Tulip Lane, Potomac, Maryland 20854 and Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

13.     Upon information and belief, defendant Sachs Capital Fund I, LLC ("Sachs Fund I") is a limited liability company organized and existing under the laws of the State of Delaware, with addresses at 15212 Falconbridge Terrace, North Potomac, Maryland 20878 and Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

14.     Upon information and belief, defendant Sachs Capital Fund II, LLC ("Sachs Fund II") is a limited liability company organized and existing under the laws of the State of Delaware, with addresses at 10516 Tulip Lane, Potomac, Maryland 20854 and Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

15.     Upon information and belief, defendant Sachs Capital – Revival, LLC ("Sachs Revival"), is a limited liability company organized and existing under the laws of the State of Delaware, with addresses at 10516 Tulip Lane, Potomac, Maryland 20854 and Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4861-5741-4461, v. 6

16.     Upon information and belief, defendant Revival LOC, LLC ("Revival LOC") is a limited liability company organized and existing under the laws of the State of Delaware, with an address at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## C.  *The Individual Defendants.*

17.     Upon information and belief, defendant Peter Manning ("Manning") is a natural person with addresses at 68 Sachuest Way, Middletown, Rhode Island 02842, 78 Diamond Road, Springfield, New Jersey 07081, and/or 1601 Belvedere Road, E102, West Palm Beach, Florida 33406.

18.     Upon information and belief, Manning is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Holdings.

19.     Upon information and belief, Manning is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Sash.

20.     Upon information and belief, Manning is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Acquisition.

21.     Upon information and belief, defendant Michael Canizales ("Canizales") is a natural person with addresses at 78 Diamond Road, Springfield, New Jersey 07081, 1601 Belvedere Road, E102, West Palm Beach, Florida 33406 and/or 7150 NE 7th Avenue, Boca Raton, Florida 33487.

22.     Upon information and belief, Canizales is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Holdings.

23.     Upon information and belief, Canizales is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Sash.

4861-5741-4461, v. 6

24.     Upon information and belief, Canizales is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Acquisition.

25.     Upon information and belief, Canizales is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Silver Lining Review.

26.     Upon information and belief, defendant Robert Henley ("Henley") is a natural person with addresses at 10516 Tulip Lane, Potomac, Maryland 20854, 78 Diamond Road, Springfield, New Jersey 07081 and/or 1601 Belvedere Road, E102, West Palm Beach, Florida 33406.

27.     Upon information and belief, Henley is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Holdings.

28.     Upon information and belief, Henley is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Sash.

29.     Upon information and belief, Henley is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Sachs Partners.

30.     Upon information and belief, Henley is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Mauloa.

31.     Upon information and belief, defendant Harris Mylonas ("Mylonas") is a natural person with addresses at 7150 NE 7th Avenue, Boca Raton, Florida 33487, 78 Diamond Road, Springfield, New Jersey 07081, and/or 1601 Belvedere Road, E102, West Palm Beach, Florida 33406.

32.     Upon information and belief, Mylonas is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Holdings.

4861-5741-4461, v. 6

33.     Upon information and belief, Mylonas is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Sash.

34.     Upon information and belief, Mylonas is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Silver Lining Review.

35.     Upon information and belief, defendant Manuel Henriquez ("Henriquez") is a natural person with an address at 7150 NE 7th Avenue, Boca Raton, Florida 33487.

36.     Upon information and belief, is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Acquisition.

37.     Upon information and belief, defendant George Cannon ("Cannon") is a natural person with an address at 11 Washington Valley Road, Morristown, New Jersey 07960.

38.     Upon information and belief, Cannon is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Revival Holdings.

39.     Upon information and belief, Cannon is, and was, at all relevant times hereto, a principal, member, officer, and/or shareholder of Mendham.

40.     Upon information and belief, defendant Brian Ramsey ("B. Ramsey") is an individual with an address at 1921 SW Panther Trce, Stuart, Florida 34997.

41.     Upon information and belief, B. Ramsey is, and was, at all relevant times hereto, a principal, member, and/or officer of Sequel.

42.     Upon information and belief, B. Ramsey is, and was, at all relevant times hereto, a principal, member, and/or officer of Ramcap.

43.     Upon information and belief, defendant Amanda Ramsey ("A. Ramsey") is an individual with an address at 1921 SW Panther Trce, Stuart, Florida 34997.

4861-5741-4461, v. 6

44.     Upon information and belief, A. Ramsey is, and was, at all relevant times hereto, a principal, member, and/or officer of Sequel.

45.     Upon information and belief, A. Ramsey is, and was, at all relevant times hereto, a principal, member, and/or officer of Ramcap.

46.     Upon information and belief, defendant Ashley Brady ("Brady") is an individual with an address at 1685 NE Darlich Avenue, Jensen Beach, Florida 34957.

47.     Upon information and belief, Brady is, and was, at all relevant times hereto, a principal, member, and/or officer of Sequel.

48.     Upon information and belief, defendant Andrew Sachs ("Sachs") is an individual with an address at 10516 Tulip Lane, Potomac, Maryland 20854.

49.     Upon information and belief, Sachs is, and was, at all relevant times hereto, principal, member, and/or officer of Revival Holdings.

50.     Upon information and belief, Sachs is, and was, at all relevant times hereto, principal, member, and/or officer of Sachs Partners, Mauloa, Sachs Fund I, Sachs Funds II, and/or Sachs Revival (collectively, the "Sachs Entities").

51.     To the extent that Revival Holdings, Revival Sash, Revival Acquisition, Sequel, Sachs Partners, Mauloa, Sachs Fund I, Sachs Fund II, and/or Sachs Revival have principals, members, owners, and/or officers not named herein, such names are unknown to Kean, and as such, Kean names them herein under the fictitious names John Doe Nos. 1 through 10 and John Doe Entity Nos. 1 through 10.  Such members are named as defendants in their individual capacities to the extent they participated in the trust fund diversion and/or fraudulent conveyances alleged herein.  Kean will amend this complaint to state the true names of such members upon discovery thereof.

4861-5741-4461, v. 6

### D.  *The Relation Between the Entity Defendants.*

52.     Upon information and belief, Revival Holdings does, and has, at all relevant times hereto, maintained an ownership interest in, and complete control over, Sequel, Revival Sash, and Revival Acquisition.

53.     Upon information and belief, Sequel, Revival Sash, and Revival Acquisition share, and, at all relevant times hereto, have shared, common ownership and operational control.

54.     Upon information and belief, at all relevant times hereto, Sequel, Revival Sash, and Revival Acquisition have failed to follow corporate formalities.

55.     Upon information and belief, at all relevant times hereto, Sequel, Revival Sash, and Revival Acquisition have been undercapitalized; instead drawing upon the capital of Revival Holdings to meet their debts, liabilities, and obligations.

56.     Upon information and belief, at all relevant times hereto, Revival Holdings, Revival Sash, Revival Acquisition, and/or Sequel have operated out of the same locations.

57.     Upon information and belief, Sequel, Revival Sash, and Revival Acquisition are, and have, at all relevant times hereto, been "shell" entities, intended to insulate Revival Holdings, Manning, Canizales, Henley, Henriquez, Cannon, B. Ramsey, A. Ramsey, Brady, and/or Sachs from liability.

58.     Upon information and belief, Sequel, Revival Sash, Revival Acquisition and Revival Holdings are, and were at all relevant times, *alter egos* of one another.

59.     Upon information and belief, Sequel, Revival Sash, Revival Acquisition and Revival Holdings are, and were at all relevant times, not truly distinct from one another.

60.     Alternatively, Revival Holdings is successor to Sequel, Revival Sash, and/or Revival Acquisition.

4861-5741-4461, v. 6

61.     Upon information and belief, among others, Mendham, Silver Lining Review, and Ramcap maintain, at all relevant times hereto have maintained, an ownership interest in Revival Holdings.

62.     Upon information and belief, at all times relevant hereto, Sachs Partners was Sachs Fund I, Sachs Fund II, and/or Sachs Revival's Managing Member.

63.     Upon information and belief, Mauloa is a "rebrand" of Sachs Partners.

64.     Upon information and belief, Sachs Fund I maintains an ownership interest in and/or funded Sachs Partner's, Sachs Fund II's, and/or Sachs Revival's acquisition of an ownership interest in, Revival Holdings.

65.     Upon information and belief, Sachs Fund II maintains an ownership interest in and/or funded Sachs Partner's, Sachs Fund I's, and/or Sachs Revival's acquisition of an ownership interest in, Revival Holdings.

66.     Upon information and belief, Sachs Revival maintains an ownership interest in and/or funded Sachs Partner's, Sachs Fund I's, and/or Sachs Fund II's acquisition of an ownership interest in, Revival Holdings.

67.     Upon information and belief, Sachs Partners maintains, and has, at all relevant times hereto, maintained, an ownership interest in and complete control over Mauloa, Sachs Fund I, Sachs Fund II, Sachs Revival, and/or Revival Holdings.

68.     Upon information and belief, Sachs Partners, Mauloa, Sachs Fund I, Sachs Fund II, Sachs Revival, and/or Revival Holdings share, and, at all relevant times hereto, have shared, common ownership and operational control.

69.     Upon information and belief, Sachs Partners and/or Revival Holdings maintain, and have, at all times relevant hereto, maintained, an ownership interest in Revival LOC.

70.     Upon information and belief, Sachs Partners does not serve, has served, or was intended to serve as the manager for Revival LOC, which was to serve to hold a line of credit for Revival Holdings' use.

71.     Upon information and belief, Sachs Fund I, Sachs Fund II, Sachs Revival, Revival LOC and/or Revival Holdings are, and at all times relevant hereto, have been, undercapitalized; instead drawing upon the capital of Sachs Partners to meet their debts, liabilities, and obligations.

72.     Upon information and belief, Sachs Partners, Mauloa, Sachs Fund I, Sachs Fund II, Sachs Revival, Revival LOC and/or Revival Holdings operate, and, at all times relevant hereto, have operated, out of the same locations.

73.     Upon information and belief, Mauloa, Sachs Fund I, Sachs Fund II, Sachs Revival, Revival LOC and Revival Holdings are, and have, at all relevant times hereto, been "shell" entities, intended to insulate Sachs Partners and/or Sachs from liability.

74.     Upon information and belief, Sachs Partners, Mauloa, Sachs Fund I, Sachs Fund II, Sachs Revival, Revival LOC and Revival Holdings are, and were at all relevant times hereto, *alter egos* of one another.

75.     Upon information and belief, Sachs Partners, Mauloa, Sachs Fund I, Sachs Fund II, Sachs Revival, Revival LOC and Revival Holdings are, and were at all relevant times hereto, not truly distinct from one another.

76.     For example, Canizales, Sachs Partners, and Sachs Fund II are alleged to have caused Revival to enter into certain loans, secured by eight promissory notes, representing a principal debt of not less than $1,605,000.00, for the purpose of converting that debt into equity.[1]

---

[1] Amended Verified Complaint, *Mendham Capital Partners LLC, ex. Rel. Revival Holdings, LLC v. Sachs Capital Fund II, LLC, et al.*, Case No. 2022-0545-LWW at ¶¶ 25-28 (Del. Ch. Oct. 4, 2022).

77.     Similarly, Sachs Partners and Sachs Fund II are alleged to have advanced funds to Revival Holdings at a sixty percent (60%) interest rate, despite the availability of funding through Revival LOC.[2]

### FACTS COMMON TO ALL CAUSES OF ACTION

78.     Pursuant to an agreement dated March 18, 2021, Kean, as contractor, and Sequel, as subcontractor, entered into an agreement (the "Agreement"), pursuant to which Sequel agreed to furnish, *inter alia*, certain labor, materials, equipment, and services to Kean at a construction and improvement project located at 41 and 43 Robertson Drive, North Haven, New York 11963 (the "Project").

79.     By virtue of the fact that they are Sequel's alter egos and/or successors, Revival Sash, Revival Acquisition, and Revival Holdings, along with its alter egos, the Sachs Entities (collectively, "Revival"), were bound to and obligors under the Agreement.

80.     Under the Agreement, Revival's work included, without limitation, securing — and paying for — custom windows (the "Subject Windows"), which were to be manufactured by non-party Arcadia Products, LLC d/b/a Arcadia Custom ("Arcadia").

81.     Kean has paid Revival no less than $2,122,003.00 in connection with the Project and Agreement (the "Project Payments").

82.     Revival represented to Kean that it would apply and deliver at least a portion of the Project Payments to Arcadia for the manufacturing of the Subject Windows.

83.     In fact, in or around August of 2022, Revival represented to Kean that absent Kean's prompt issuance of a portion of the Project payments, representing approximately $1,000,000.00, Arcadia would not manufacture the Subject Windows in accordance with the agreed-upon production schedule.

---

[2] *Id.* at ¶ 30.

84.     Upon information and belief, despite receipt of the Project Payments and its representations, Revival has failed to make any payment to Arcadia in connection with the Subject Windows.

85.     In purporting to explain why Revival had yet to make payment to Arcadia, Revival cited a purported internal "shareholder dispute" — allegedly stemming from one or more of the Sach's Entities purported decision to "close down their fund" and request that Revival "buy them out," rather than to "raise our [Revival's] next round of finance and stay on as a long term shareholder," as Revival expected they would — which allegedly caused all of its funding "on jobs" to have been "paused."

86.     Kean has been advised by Arcadia that by virtue of Revival's failure to make payment to Arcadia, Arcadia has not manufactured any of the Subject Windows.

87.     By Revival's own admission, such failure has delayed the Project "by at least a month."

88.     On October 26, 2022 — despite having previously advised that Revival had found a partner that would enable it to "fund" its performance at the Project and under the Agreement — Canizales advised Kean as follows:

> We have tried and failed to conclude a deal and are going to appoint a Trustee to manage the wind down process at this point. We made the final call moments ago.  Thank you for the patience while we tried to find a path forward.
>
> I will speak to them and get them all the back up on this transaction as soon as I have their information.
>
> Sorry to report this news but you deserved to hear it from me directly.

89.     Upon information and belief, Revival is no longer in possession of some or all of the monies constituting the Project Payments.  In fact, despite repeated demands that defendants

4861-5741-4461, v. 6

provide the whereabouts and accounting of the Project Payments, the defendants have refused and failed to provide either an accounting or the whereabouts of the Project Payments.

90.     Despite repeated demands to perform or return the Project Payments, the defendants have done neither.

## AS AND FOR A FIRST CAUSE OF ACTION
## (FOR BREACH OF CONTRACT)

91.     Kean repeats and re-alleges each and every allegation set forth in Paragraphs "1" through"90" of this Complaint as if fully set forth herein.

92.     Through the Agreement, Kean and Revival became parties to a written contract.

93.     Kean performed each and every obligation on its part to be performed with regard to the Agreement, excepting those waived and/or prevented by Revival.

94.     Revival nonetheless failed to fully and properly perform under the Agreement, and has abandoned the Agreement.

95.     Revival's failure to perform under the Agreement constitutes a material breach of the Agreement.

96.     As incident to said material breach, Kean has incurred damages, including, without limitation, a loss of the Project Payments.

97.     Further, pursuant to the Agreement:

> In any legal action related to, connected with, or arising from this agreement, the prevailing party shall be entitled to reimbursement of its attorney's fees and costs, whether incurred in or out of court, on appeal, in arbitration or in any insolvency or bankruptcy proceedings.

98.     As incident to Revival's material breach of the Agreement, Kean has incurred, and will continue to incur, attorney's fees and costs.

99.     Revival is liable for all such attorney's fees and costs.

100.     By reason of the foregoing, Revival is indebted to Kean in a sum to be determined at trial, but in no event less than $2,122,003.00, together with interest thereon, attorney's fees and costs.

### AS AND FOR A SECOND CAUSE OF ACTION
### (FOR COMPLETION COSTS AND ATTORNEY'S FEES)

101.     Kean repeats and re-alleges each and every allegation set forth in Paragraphs "1" through "100" of this Complaint as if fully set forth herein.

102.     Under the Agreement, Revival agreed to, *inter alia*, deliver certain goods to Kean at the Project — *i.e.*, the Subject Windows.

103.     Revival has abandoned the Agreement, and will therefore not deliver the Subject Windows to Kean.

104.     In addition to its entitlement to the return of the Project Payments, pursuant to UCC § 2-713:

> [T]he measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this Article (Section 2-715), but less expenses saved in consequence of the seller's breach.

105.     Moreover, pursuant to the Agreement:

> In the event that the cost to finish the Work exceeds the unpaid amount of the Contract sum, Kean shall have the right to hold Subcontractor liable for such cost, including, without limitation, Kean's attorney's fees, if litigation is required.

106.     Upon information and belief, since the date of the Agreement, the market price of windows of the kind and character of the Subject Windows has increased significantly.

107.     Upon information and belief, Revival's material breach of the Agreement does not in any way represent a savings to Kean.

108.    As a result, Kean has been damaged in an amount to be determined at trial, representing, among others, the return of the Project Payments, the difference in the value of the Agreement and the market price of the Subject Windows as of October 26, 2022, together with incidental and consequential damages.

109.    By reason of the foregoing, Revival is indebted to Kean in a sum to be determined at trial, but in no event less than $2,122,003.00, together with the difference in the value of the Agreement and the market price of the Subject Windows as of October 26, 2022 (or such other date deemed by this Court to be appropriate and just), incidental and consequential damages, as well as interest thereon, attorney's fees and costs.

### AS AND FOR A THIRD CAUSE OF ACTION
### (FOR DELAY DAMAGES)

110.    Kean repeats and realleges each and every allegation set forth in Paragraphs "1" through "109" of this Complaint as if fully set forth herein.

111.    Time was a material term of the Agreement.

112.    Under the Agreement, Kean reserved claims for damages due to delays stemming from Revival's acts or omissions.

113.    Revival's breach of the Agreement represents a significant time impact to the Project's achievement of substantial completion.

114.    In fact, by Revival's own admission, even if it had not abandoned the Agreement, as of October 2022, Revival's failure to pay Arcadia would have represented a delay to the Project's schedule of no less than a month.

115.    By virtue of delays associated with Revival's acts and omissions, Kean has, and will continue, to suffer damages.

116.    By reason of the foregoing, Revival is indebted to Kean in a sum to be determined at trial, but in no event less than $500,000.00 together with interest thereon, attorney's fees and costs.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(FOR UNJUST ENRICHMENT)**

117.    Kean repeats and realleges each and every allegation set forth in Paragraphs "1" through "116" of this Complaint as if fully set forth within.

118.    Kean retained Revival to furnish labor, materials, equipment and services in connection with the Project (Revival's "Work"), and made the Project Payments to Revival in connection therewith.

119.    By virtue of the Project Payments, Kean enriched Revival in an amount not less than $2,122,003.00.

120.    Revival has nonetheless failed to render the performance for which Kean retained it at the Project, and Revival has abandoned the Project.

121.    Despite due demand therefor, Revival has failed to return the Project Payments.

122.    It would be against equity and good conscience to permit Revival to retain the Project Payments, in light of (1) Revival's failure to render the labor, materials, equipment, and services to which the Project Payments were to be applied; (2) Revival's abandonment of the Project; and (3) the resultant damage to Kean.

123.    Accordingly, Revival has been unjustly enriched in an amount not less than $2,122,003.00.

124.    As a result of Revival's manifestly inequitable and improper conduct, Kean has been damaged in an amount not less than $2,122,003.00, together with interest thereon.

125.    By reason of the foregoing, Revival is indebted to Kean in a sum to be determined at trial, but in no event less than $2,122,003.00, together with interest thereon, attorney's fees and costs.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (FOR MONIES HAD AND RECEIVED)

126.    Kean repeats and realleges each and every allegation set forth in Paragraphs "1" through "125" of this Complaint as if fully set forth herein.

127.    In consideration of Revival's full and proper performance of the Work, Kean made payment to Revival of not less than $2,122,003.00.

128.    Revival failed to fully and properly perform its Work, and thereafter abandoned the Work and Project.

129.    Despite its failure to render performance of the Work, as well as its abandonment of the Project, Revival has refused to return the Project Payments to Kean.

130.    In failing to return the Project Payments to Kean, Revival has improperly retained and benefitted from the Project Payments.

131.    The principals of equity and good conscious dictate that Revival must not be permitted to retain the Project Payments.

132.    By reason of the foregoing, Revival is indebted to Kean in a sum to be determined at trial, but in no event less than $2,122,003.00, together with interest thereon, attorney's fees and costs.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (FOR ACCOUNT STATED)

133.    Kean repeats and realleges each and every allegation set forth in Paragraphs "1" through "132" of this Complaint as if fully set forth herein.

134.    An account — *i.e.*, the Project Payments — was stated by and between Kean and Revival for the sum of at least $2,122,003.00, without objection.

135.    Despite due demand therefor, Revival has failed to make full payment to Kean for said account, leaving the sum of at least $2,122,003.00 due and owing to Kean.

136.    By reason of the foregoing, Revival is indebted to Kean in a sum to be determined at trial, but in no event less than $2,122,003.00, together with interest thereon, attorney's fees and costs.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(FOR DIVERSION OF TRUST FUNDS UNDER ARTICLE 3-A**
**OF THE LIEN LAW OF THE STATE OF NEW YORK)**

137.    Kean repeats and realleges each and every allegation set forth in Paragraphs"1" through "136" of this Complaint as if fully set forth herein.

138.    This cause of action is brought as a class action pursuant to Federal Rule of Civil Procedure 23 and/or CPLR 901.

139.    The class is defined as the beneficiaries of that certain trust fund created under Article 3-A of the Lien Law (the "Lien Law Trust").

140.    Upon information and belief, the class is so numerous that joinder of all members is impracticable.

141.    There are numerous questions of law and fact common to the class that predominate over questions affecting only individual members.

142.    The claims Kean set forth in this count are typical of all beneficiaries of the Lien Law Trust.

143.    Kean will adequately and fairly protect the interests of the class.

4861-5741-4461, v. 6

144.     This action is properly maintained as a class action pursuant to Section 77 of the Lien Law of the State of New York, and a class action is therefore superior to other methods for the fair and efficient adjudication of the within controversy.

145.     Revival has received certain monies — *i.e.*, the Project Payments — in connection with the Project.

146.     The Project Payments constituted funds properly held in trust for, and first applied for the benefit of, the beneficiaries of the Lien Law Trust (the "Trust Funds").

147.     Kean is among those beneficiaries of the Lien Law Trust.

148.     Upon information and belief, despite having received the Trust Funds, Revival has appropriated them for its own purposes, diverting them to, among others, resolve internal shareholder disputes and facilitate the liquidation of investment funds that are in no way related to the Project.

149.     As such, the defendants have unlawfully diverted monies constituting the *res* of the Lien Law Trust pursuant to Article 3-A of the Lien Law of the State of New York.

150.     Pursuant to Section 79-a of the Lien Law of the State of New York, the following individuals and entities (collectively, the "Diverting Defendants") are liable for the diversion of such Trust Funds:

   a.  Revival;

   b.  Manning;

   c.  Henley;

   d.  Canizales;

   e.  Mylonas;

   f.  Henriquez;

4861-5741-4461, v. 6

g.      Cannon;

h.      B. Ramsey;

i.      A. Ramsey;

j.      Brady;

k.      Mendham;

l.      Silver Lining Review;

m.      Ramcap;

n.      Such other principals, officers, members, and owners of Revival who participated in or directed the diversion of the Trust Funds, whose names are presently unknown to Kean;

o.      Sachs Partners;

p.      Mauloa;

q.      Sachs Fund I;

r.      Sachs Fund II;

s.      Sachs Revival;

t.      Revival LOC;

u.      Sachs; and/or

v.      Such other principals, officers, members, and owners of the Sachs Entities that participated in the diversion of the Trust Funds, whose names are presently unknown to Kean.

151.    Kean has no adequate remedy at law with respect to the diversion of the Trust Funds set forth herein.

152.   Based on the foregoing, Kean is entitled to judgment against the Diverting Defendants, jointly and severally, adjudging that they are each a trustee of all sums paid to them on account of all improvements, and that they are liable to the beneficiaries, in the amount not less than $2,122,003.00 together with interest thereon, as well as punitive damages, attorneys' fees, and costs.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### (FOR CONVERSION)

153.   Kean repeats and realleges each and every allegation set forth in Paragraphs "1" through "152" of this Complaint as if fully set forth herein.

154.   Kean has issued the Project Payments to Revival, in exchange for which Revival was to perform the Work — including, without limitation, paying Arcadia so that the Subject Windows would be manufactured and delivered to the Project.

155.   Revival intentionally accepted the Project Payments.

156.   Revival failed to render the performance for which the Project Payments were to serve as compensation; instead retaining the Project Payments, and abandoning the Work and Project.

157.   Revival has no rightful claim to the Project Payments.

158.   Kean is the legal owner of the Project Payments.

159.   Kean has demanded that Revival return the Project Payments.

160.   Revival has failed or refused to return the Project Payments to Kean, the lawful owner of the Project Payments.

161.   Revival's wrongful retention of the Project Payments has deprived Kean of the possession and use of the Project Payments.

162.     As a result of Revival's wrongful retention of the Project Payments, Kean has been damaged.

163.     By reason of the above, Kean has sustained damages in the sum of $2,122,003.00 plus interest thereon, as well as attorneys' fees and the cost and disbursements related to this action.

**AS AND FOR A NINTH CAUSE OF ACTION**
**(FOR FRAUDULENT MISREPRESENTATION)**

164.     Kean repeats and realleges each and every allegation set forth in Paragraphs "1" through "163" of this Complaint as if fully set forth herein.

165.     Revival — and, among others, its officer, Canizales, personally — made material misrepresentations of fact to Kean, including without limitation, that:

    a.     The Project Payments would be applied to Revival's performance at the Project;

    b.     Absent Kean's prompt payment of approximately $1,000,000.00, Arcadia would not manufacture the Subject Windows in accordance with the agreed-upon production schedule;

    c.     Revival had made payment to Arcadia in connection with the Project; and

    d.     Revival could "fund" its performance at the Project.

166.     Upon information and belief, at the time Revival and Canizales made such misrepresentations, they knew them to be false.

167.     Upon information and belief, Revival and Canizales made such misrepresentations for the purpose of defrauding Kean.

168.     Kean relied on such misrepresentations to its detriment, inasmuch as, *inter alia*, it has issued the Project Payments to Revival, received no commensurate performance, forwent its

right of termination under the Agreement, forwent the commencement of legal proceedings to recover the Project Payments, and incurred potentially substantial liability associated with Project delays.

169.    By reason of the foregoing, Revival and/or Canizales are indebted to Kean in an amount to be determined at trial, but in no event less than $2,122,003.00, together with interest thereon, attorney's fees and costs.

**AS AND FOR A TENTH CAUSE OF ACTION**
**(FOR NEGLIGENT MISREPRESENTATION)**

170.    Kean repeats and realleges each and every allegation set forth in Paragraphs "1" through "169" of this Complaint as if fully set forth herein.

171.    Kean, Revival, and Canizales, personally, were parties to a special relationship.

172.    By virtue of that special relationship, Revival and Canizales owed a duty to Kean to impart correct information to it.

173.    Notwithstanding the existence of that duty, Revival — and, among others, its officer, Canizales, personally — made material misrepresentations of fact to Kean, including without limitation, that:

  a.    The Project Payments would be applied to Revival's performance at the Project;

  b.    Absent Kean's prompt payment of approximately $1,000,000.00, Arcadia would not manufacture the Subject Windows in accordance with the agreed-upon production schedule;

  c.    Revival had made payment to Arcadia in connection with the Project; and

  d.    Revival could "fund" its performance at the Project.

4861-5741-4461, v. 6

174. If those misrepresentations were not intentional, they were, at a minimum, negligent, in that Revival and Canizales should have known, among others, that:

    a. Revival intended to utilize the Project Payments for purposes unrelated to the Project;

    b. Kean's prompt payment of approximately $1,000,000.00 would not serve the purpose of ensuring that Arcadia would manufacture the Subject Windows in accordance with the agreed-upon production schedule, but rather, would be applied to purposes unrelated to the Project and Kean;

    c. Revival had not made payment to Arcadia in connection with the Project; and

    d. Revival was not sufficiently solvent to pay Arcadia in connection with the Project.

175. Revival and Canizales' misrepresentations breached the duty of care they owed to Kean, and Kean reasonably relied on those representations.

176. Kean relied on such misrepresentations to its detriment.

177. By reason of the foregoing, Revival and/or Canizales are indebted to Kean in an amount to be determined at trial, but in no event less than $2,122,003.00, together with interest thereon, attorney's fees and costs.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (FOR FRAUDULENT CONVEYANCE)

178. Kean repeats and realleges each and every allegation set for in Paragraphs "1" through "177" of this Complaint as if fully set forth herein.

179. Kean made the Project Payments to Revival, in exchange for which Revival was to perform the Work.

180. Revival failed to render the performance for which the Project Payments were to be applied.

181. In attempting to explain why Revival has failed to render that performance, Revival cited an internal shareholder dispute allegedly arising out of, upon information and belief, one or more of the Sachs Entities demand that Revival "buy them out."

182. Further, upon information and belief, Revival has utilized the Project Payments to fund internal operating costs, including without limitation, salaries.

183. Revival has represented to Kean that it intends to dissolve without rendering the performance to which the Project Payments were to be applied.

184. Upon information and belief, Revival has conveyed some or all of the Project Payments to the Sachs Entities, Sachs, and/or such other principals, officers, members, and owners of the Sachs Entities that that maintained an ownership interest in Revival, whose names are presently unknown to Kean, so as to "buy [them] out[.]"

185. Upon information and belief, Revival has conveyed some or all of the Project Payments to fund, among others, payments to Manning, Canizales, Henley, Mylonas, Henriquez, Cannon, B. Ramsey, A. Ramsey, Brady and/or such other principals, officers, members, and owners of Revival, whose names are presently unknown to Kean.

186. Upon information and belief, Revival has conveyed some or all of the Project Payments to its shareholders, whose names are presently unknown to Kean, but who, upon information and belief, include, without limitation, Sachs, the Sachs Entities, Silver Lining Review, Ramcap, Mendham, Manning, Canizales, Henley, Henriquez, Cannon, B. Ramsey, A. Ramsey, and/or Brady.

187.    Upon information and belief, the conveyances identified in the within Paragraph Nos. "184" to "186" have rendered Revival insolvent.

188.    Upon information and belief, at the time of the conveyances identified in the within Paragraph Nos. "184" to "186," Revival retained unreasonably small capital to conduct its business.

189.    Upon information and belief, at the time of the conveyances identified in the within Paragraph Nos. "184" to "186," Revival believed that it would incur debts that it would not be able to pay as they mature.

190.    Upon information and belief, at the time of the conveyances identified in the within Paragraph Nos. "184" to "186," Revival understood that such transfers would render it unable to render the performance for which the Project Payments were to be applied.

191.    Upon information and belief, Revival made the conveyances identified in the within Paragraph Nos. "184" to "186" without fair consideration.

192.    The conveyances identified in the within Paragraph Nos. "184" to "186" were fraudulent, and Kean is entitled to set such conveyances aside.

193.    By reason of the foregoing, Revival, the Sachs Entities, Manning, Henley, Canizales, B. Ramsey, A. Ramsey, and/or Brady, such other principals, officers, members, owners, and/or shareholders of Revival that accepted the Project Payments, whose names are presently unknown to Kean, Sachs, as well as such other principals, officers, members, and owners of the Sachs Entities that that maintained an ownership interest in Revival, whose names are presently unknown to Kean, are collectively indebted to Kean in an amount to be determined at trial, but in no event less than $2,122,003.00, together with interest thereon, as well as attorney's fees and punitive damages.

**WHEREFORE**, Kean Development Company, Inc. respectfully demands judgment as follows:

(1)     As and for the First, Second, Fourth, Fifth, Sixth, and Eighth Causes of Action, in favor of Kean Development Company, Inc., and against all defendants, in an amount to be determined at trial, but in no event less than $2,122,003.00, together with interest thereon, attorney's fees and costs; and

(2)     As and for the Third Cause of Action, in an amount to be determined at trial, in favor of Kean Development Company, Inc., and against all defendants, in an amount to be determined at trial, but in no event less than $500,000.00, together with interest thereon, attorney's fees and costs; and

(3)     As and for the Seventh Cause of Action, as against all defendants, jointly and severally, adjudging that they are each trustees of a certain trust arising pursuant to Lien Law Article 3-A in connection with the Project, and that they are liable to the beneficiaries of said trust in an amount not less than $2,122,003.00, together with interest thereon, as well as punitive damages, attorneys' fees, and costs;

(4)     As and for the Ninth and Tenth Causes of Action, in favor of Kean Development Company, Inc., and against Revival Holdings LLC, Revival Sash & Door, LLC, Prelude LLC d/b/a Sequel, and Mike Canizales, in an amount to be determined at trial, but in no event less than $2,122,003.00, together with interest thereon, attorney's fees and costs;

(5)     As and for the Eleventh Cause of Action, in favor of Kean Development Company, Inc., and against all defendants, for an Order directing that (a) the conveyances identified in the within Paragraph Nos. "184" to "186" be set aside, and (b) the recipients of such conveyances are liable to Kean Development Company, Inc., jointly and severally, in an amount

to be determined at trial, but in no event less than $2,122,003.00, together with interest thereon, as well as attorney's fees and punitive damages; and

(6)     Granting Kean Development Company, Inc. such other and further relief as the Court deems just and proper.

Dated:          Mineola, New York
                November 17, 2022

                                            **MELTZER, LIPPE, GOLDSTEIN &**
                                            **BREITSTONE, LLP**
                                            *Attorneys for Plaintiff*
                                            *Kean Development Company, Inc.*


                                            By:_____
                                                    Manny A. Frade, Esq.
                                                     Adam P. Wald, Esq.
                                            190 Willis Avenue
                                            Mineola, New York 11501
                                            (516) 747-0300